IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                           Crim. No. 12-163 MCA


GAVIN YEPA,

        Defendant.

## ORDER EXCLUDING 911 PHONE CALL

This matter is before the Court upon Defendant's Motion to Exclude Evidence [Doc. 117]. The Court has considered the Motion, the United States' Response [Doc. 188], the Defendant's Reply [Doc. 120], the representations of counsel at the August 8, 2013 pre-trial hearing, the record in this case and the applicable law, and is otherwise fully advised. For the following reasons, the Court **grants** Defendant's Motion.

**Background**

This case arises out of a December 28, 2011 homicide within boundaries of Jemez Pueblo, in the District of New Mexico. Within hours of the homicide, FBI agents began an investigation. On January 1, 2012, a criminal complaint was filed charging Defendant with sexual assault. [Doc. 1] The affidavit attached to the complaint establishes that the FBI was aware on January 1, 2012, that the victim had brought her cellular phone with her to Defendant's residence and that "R.A.," a friend of Defendant, had been present at the scene of the murder around the time of the murder, and had stolen the victim's phone. The affidavit makes it clear

that the FBI also was aware that R.A. led officers from the Jemez Pueblo Police Department

("JPPD") to the location where he had discarded the victim's cellular phone.

Defendant was arrested on January 3, 2012, and has been detained since that date.

On January 26, 2012, a grand jury returned a two count indictment charging Defendant

with  homicide. On February 23, 2012, the Court set the case for trial to begin on April 4, 2012.

Pursuant to the trial preparation instructions attached to the Notice of  Jury Selection and Trial

[Doc. 26],  exhibits were to be identified no later than thirteen days before the March 29, 2012

call of the calendar.   The trial preparation instructions attached to the scheduling order stated the

following:

> The pretrial deadlines listed below apply unless specifically modified by order of
> the Court. **Counsel must seek leave of the Court in the form of a written
> motion to extend or be excused from any pretrial deadline. Motions to extend
> deadlines must address how the extension will affect other case management
> deadlines, including the trial date.**

On March 21, 2013, Defendant moved to vacate and continue the trial.  [Doc. 27]  The

Court granted the motion and on March 23, 2012, reset the trial for June 11, 2012.  Pursuant to

the Court's March 23, 2012 Order, exhibits were to be identified no later than thirteen days

before the reset call of the calendar on June 7, 2012.  On April 4, 2012, Defendant filed an

unopposed motion seeking to have this case declared complex for speedy trial purposes. [Doc.

29]  The Court granted the motion on April 11, 2012. [Doc. 30]  On May 15, 2012, the Court

entered a Scheduling Order resetting the trial for January 22, 2013 and directing the parties to

exchange witness lists by November 1, 2012. On July 23, 2012, the United States filed a motion

to amend the scheduling order to allow the United States additional time to disclose its DNA and

blood splatter results.  The Court granted this request on July 27, 2012.  [Doc. 34]  On

September 27, 2012, the United States filed an unopposed motion requesting further

modifications to the scheduling order. [Doc. 35] On October 1, 2012, the Court entered a Second

Amended Scheduling Order providing that exhibit lists were to be exchanged no later than 30

days before trial, the date of which was to be set by further order of the Court. [Doc. 36]  On

October 1, 2012, the Court entered its Third Scheduling Order directing the parties to exchange

exhibit and witness lists by May 15, 2013, and setting the trial for August 14, 2013.  On May 15,

2013, the parties filed exhibit lists and witness lists. [Doc. Nos. 53-56]

On June 7, 2013, the United States filed its *Motion in* Limine *to Admit Excited Utterance*

*by Eyewitness* [Doc. 68]  The motion sought an ruling in advance of trial as to certain statements

made by R.A. during a phone call made from the victim's cellular phone on the night of the

murder.

On July 24, 2013, the United States filed an Amended Exhibit List.  [Doc. 86]  On

August 5, 2013, the United States filed a Second Amended Exhibit List. [Doc. 102]  On August

7, 2013, the United States filed a Third Amended Exhibit List [Doc. 108], which for the *first*

*time* included as an exhibit a recording of a December 28, 2011, 911 call.

On August 8, 2013, the Court held a pre-trial hearing to settle objections to exhibits,

among other matters.  During this hearing the Court learned of Defendant's strenuous objection

to the United State's untimely designation of the audio recording of the 911 call as an exhibit.

After hearing arguments from the parties, the Court directed the parties to brief the issue on an

expedited schedule., and that briefing was completed on the following day, August 9th.

**Discussion**

As explained above, under the Court's standing trial preparation instructions, the United

States was obligated to file a written motion seeking the Court's permission to add the 911

recording.  Since the motion would have been filed after the May 15, 2013, deadline for

3

exchanging exhibit lists, the United States would have borne the burden of demonstrating excusable neglect, Fed. Crim. P. Rule 45(b)(1)(B). The Court will not allow the United States to evade a Rule 45(b)(1)(B) showing of excusable neglect by failing to file the required motion requesting leave to add an untimely designated exhibit, thereby imposing on the Defendant the burden of filing a motion to exclude. Although Defendant technically is the movant, the Court concludes that Defendant's motion turns upon the United States' showing that its untimely designation was the result of excusable neglect.

Our Court of Appeals has identified four non-exclusive factors to be considered in determining if excusable neglect has been shown: "[1] the danger of prejudice to the [nonmoving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *United States v. Torres*, 373 F.3d1159, 1162 (10th Cir. 2004) (construing Fed. App. P. Rule 4(b)(4)) (quoting *Pioneer Invest. Serv. Co. v. Brunswick Assoc. L.P.*, 507 U.S. 380, 395 (1993)).

Turning to the first factor, the Court finds that Defendant's preparation for trial has been seriously disrupted by the United States' untimely designation of the recording of the 911 call. If the representations of the United States prove to be correct, the recording of the 911 call will be, in the words of defense counsel "devastating to the defense."[1]  [Doc. 118 at 6]  Defendant is entitled to a fair opportunity to prepare to meet this new evidence. While Defendant's due

---

[1]This may not be overstatement. The Court has had the opportunity to listen to the recording, which captures in real time a sexual assault on an extremely intoxicated victim. The voices of a distressed woman and an unidentified male can be heard. According to the Government, this is a recording of the assault of the victim in this case by the Defendant, which assault resulted in her death.

process rights arguably could be protected by a continuance, a continuance would impair the speedy trial rights of Defendant, who has been continuously detained since his arrest in January 2012.  The United States, by its neglect, should not be permitted to force Defendant to give up one constitutional right to protect another.  The Court finds that this factor weighs against the United States.

Turning to the second factor, the Court finds the length of delay to be significant. Pursuant to the Court's Third Scheduling Order, exhibit lists were to be exchanged by May 15, 2013, leaving Defendant approximately three months prior to trial to prepare his response to the United States' exhibits.  The delay until the week before trial in designating the recording of the 911 call denies Defendant a fair opportunity to prepare to meet the new evidence, leaving a continuance as the only means of preserving the Defendant's due process rights.  An unexpected continuance, however, is seriously disruptive to the Court's orderly administration of its docket. The Court and its staff have devoted many hours in preparing this case for trial on the August docket, hours that could have been devoted to other time-sensitive matters deserving  the Court's immediate attention.  The Court finds  that this factor also weighs against the United States.

Turning to the third factor,  the reason for the delay, the Court finds itself unpersuaded by the United States' excuse.  To excuse its untimely designation, the United States argues that the AUSAs handling this case designated the recording of the 911 call as an exhibit as soon as they had made a connection to this case.  Be that as it may, it is at best an incomplete explanation. The "United States" comprises not just the AUSAs, but its investigative agencies.  The affidavit attached to the criminal complaint establishes that the United States was aware by January 1, 2012 that the victim had a cellular phone with her on the night of the murder.  While the statement that R.A. "led JPD officers to where he had disposed of the phone" does not make it

clear that the JPPD officers recovered the phone, it does show that by January 1, 2012 the FBI had the information necessary to formulate the obvious question: "By the way, did you find the victim's phone?"   Therefore, while it may be true that it was "unknown to the FBI until July 31, 2013, [that] the Jemez Pueblo Police Department had recovered the victim's cellular telephone the day after she was murdered," [Doc. 118 at 4] that lack of knowledge does not reflect a diligent investigation by the United States.  It appears to the Court that if the United States had acted diligently by pressing the JPPD for access to the victim's phone, it would have been "able to charge it, confirm the number she was using at the time of her death, and see that she made a 911 call the night she was killed" [Doc. 118 at 4] well prior to July 31, 2013.[2]  The United States has not satisfactorily explained to the Court the reason for the delay between January 1, 2012 and July 31, 2013 in obtaining the victim's cellular phone.  "[F]ault in the delay remains a very important factor--perhaps the most important single factor--in determining whether neglect is excusable."  *Torres*, 372 F.3d  at 1163 (quoting *City of Chanute v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046 (1994)) (internal quotation marks omitted). This factor weights heavily  against the United States.

Turning to the fourth factor, the Court finds that the United States acted in bad faith. The United States knew of the Court's May 15, 2013 deadline for exchanging exhibit lists and it knew that its August 7, 2013 designation of the recording of the 911 call was untimely.  The United States  knew, or certainly should have known, of the Court's standing trial preparation instructions, a copy of which was attached to the Court's Notice of Jury Selection and Trial [Doc.

---

[2]At the August 8, 2013 hearing, the United States represented that "until [the case agent] had physical custody of the cell phone, *which he had no way to know that Jemez Pueblo had custody of*, given their repeated requests to receive it, he couldn't draw the connection until yesterday, at which point he called me." (Emphasis added).

26]  Pursuant to those instructions,  the United States was required to file a written motion

seeking relief from the May 15, 2013 deadline, and pursuant to Fed. Crim. P.  Rule 45(b)(1)(B),

that motion would have been required to set out excusable neglect.  Instead of pursuing the

proper course, the United States attempted to slip this untimely exhibit (which the United States

now holds out as extremely damaging to the defense) into a Third Amended Witness list.  The

Court finds this to be inconsistent with good faith.

Having addressed the four *Torres* factors, each of which weighs against the United

States, the Court concludes that the United States has not shown excusable neglect, and

therefore, its designation of the recording of the  recording of the  911 call, proposed Exhibit

234, is stricken as untimely.

**WHEREFORE,  IT IS HEREBY ORDERED** that Defendant's *Motion to Exclude*

*Evidence* [Doc. 117] is **granted**.

So ordered this 11th day of August, 2013.

_____

M. CHRISTINA ARMIJO
Chief United States District Judge