IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                        Crim. No. 12-163 MCA


GAVIN YEPA,

        Defendant.


**<u>ORDER CONTINUING PRETRIAL DETENTION</u>**

This matter came before the Court on December 30, 2013 for a hearing pursuant to 18 U.S.C. § 3142(f) on Defendant's *Motion to Review Detention Order* [Doc. 143]. By his Motion Defendant seeks release to La Pasada Halfway House pending trial.  The Court has considered the written submissions of the parties, the arguments and evidentiary proffers of the parties, the record in this case, the reports and recommendations of the Pretrial Services Office, and the applicable law, and is otherwise fully advised.

This case arises out of a December 28, 2011 homicide within boundaries of Jemez Pueblo.   On January 3, 2012, a criminal complaint was filed charging Defendant with sexual assault. [Doc. 1] Defendant was arrested on January 3, 2012. [Doc.5] On January

24, 2012, the Court ordered that Defendant's potential for dangerousness be assessed by a psychologist.  Mercedes Marshall, PhD submitted her report on February 10, 2012. On January 26, 2012, a grand jury returned a two count indictment charging Defendant with felony murder and aggravated sexual assault resulting in death.  On February 22, 2012 the Court ordered that Defendant be detained pending trial based on a finding that there is a serious risk that the defendant will endanger the safety of another person in the community unless detained. [Doc. 25] Defendant has been detained continuously since his arrest.

Defendant is charged with two extremely serious crimes of violence, committed under horrific circumstances. The Court has considered the factors under subsection 3142 (g)(3)(A).  As is noted below, the United States has marshalled evidence of Defendant's guilt going well beyond mere probable cause to believe that Defendant committed the crimes charged in the Indictment.  And in consideration of other factors set out in subsection 3142 (g)(3)(A), the Court has given considerable weight to Dr. Mercedes Marshall's February 10, 2012 Pre-trial Psychological Assessment. [Doc. 20]  The Court finds that Defendant is seriously chemically dependent, with alcohol his current drug of choice; that when he abuses alcohol, he does so to the point of self destruction and disregard for the consequences of his intoxicated behavior; that although, when sober, he does not present a high risk of harm to others, he is a danger to himself and others when he does drink.  The Court further finds that given Defendant's alcohol dependence and his history of relapse and binge drinking, he is a risk to himself and others unless he is

2

confined under circumstances assuring absolute denial of access to alcohol; and that La Pasada Halfway House, the third-party custodian proposed by Defendant, is not an environment where absolute denial of Defendant's access to alcohol can be assured. Defendant has not come forward with evidence not known to him at the time of the original detention hearing bearing on the issue of whether there are conditions of release that will reasonably assure the safety of any other person and the community. Accordingly, Defendant has not established grounds for reopening the Magistrate Judge's finding that there are no conditions of release that will reasonably assure the safety of any person and the community. 18 U.S.C. § 3142(f).  Alternatively, having considered the factors set out in 18 U.S.C. § 3142(g) *de novo*, applying a clear and convincing evidence standard of proof, the Court finds that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community should Defendant be released.[1]  Accordingly, 18 U.S.C. § 3142(e) mandates that Defendant be detained pending trial.

Defendant argues that the length of pretrial detention is so protracted that it violates his constitutional rights. In *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court upheld against a facial substantive due process challenge the provisions of the Bail Reform Act of 1984 authorizing pretrial detention of defendants on the ground of

_____

[1]The United States has not shown that the conditions set out in § 3142(e)(2)(A) through (C) are satisfied in Defendant's case.  Further, neither offense with which Defendant is charged is listed in § 3142(d)(3)(A) through (E).  Accordingly, the Court did not afford the United States the benefit of the rebuttable presumption authorized by § 3142(e)(2) and (3).

future dangerousness.  *Salerno*  recognized that subject to stringent substantive standards coupled with procedural safeguards, including proof by clear and convincing evidence and an adversarial hearing before a neutral decisionmaker, an accused person may subjected to preventive pretrial detention where the person presents an "identified and articulable" threat to another individual or the community.  *Foucha v. Louisiana*, 504 U.S. 71, 81 (1992) (discussing and quoting *Salerno*).  "There is no doubt that preventing danger to the community is a legitimate regulatory goal."  *Salerno*, 481 U.S. at 747.  "The government's interest in preventing crime by arrestees is both legitimate and compelling."  *Id.* at 749.

In non-binding, unpublished decisions, the Tenth Circuit Court of Appeals has approved the Second Circuit Court of Appeals' three-factor test for determining whether the length of pretrial detention has become constitutionally excessive. *United States v. Jarvis*, No. 08-2223, 299 Fed. Appx. 804, 808 (10th Cir. Nov. 13, 2008) (unpublished decision) (citing *United States v. Millan*, 4 F.3d 1038 (2d Cir. 1993)).  The *Millan* test requires a court to weigh three factors: (i) the length of detention; (ii) the extent of the government's responsibility for the delay in trying the defendant (iii) the strength of the evidence justifying detention.  *Id.*  In *Jarvis*, a case in which the defendant's detention was justified by both risk of flight and dangerousness, our Court of Appeals expressly reserved the question of whether the *Millan* test "appropriately determine[s] when a protracted detention becomes 'punishment." 299 Fed. Appx. at 808. In each case, a court must conduct a case-specific identification and balancing of the government's and the

4

defendant's respective interests.  *United States v. Deters*, 143 F.3d 577, 582-85 (10th Cir. 1998);  *United States v. Gonzales*, No. 98-2089, 1998WL321218 *3 (10th Cir. June 5, 1998) (unpublished decision) (observing that "each case turns on its own facts and circumstances").

On February 23, 2012, the Court set the case for trial to begin on April 4, 2012. On March 21, 2012, Defendant moved to vacate and continue the trial.  [Doc. 27]  The Court granted the motion and on March 23, 2012, reset the trial for June 11, 2012.  On April 4, 2012, Defendant filed an unopposed motion seeking to have this case declared complex for speedy trial purposes. [Doc. 29]   The Court granted the motion on April 11, 2012. [Doc. 30]  On May 15, 2012, the Court entered a Scheduling Order resetting the trial for January 22, 2013. On July 23, 2012, the United States filed a motion to amend the scheduling order to allow the United States additional time to disclose its DNA and blood splatter results.  The Court granted this request on July 27, 2012.  [Doc. 34] On September 27, 2012, the United States filed an unopposed motion requesting further modifications to the scheduling order. [Doc. 35] On October 1, 2012, the Court entered a Second Amended Scheduling Order providing that exhibit lists were to be exchanged no later than 30 days before trial, the date of which was to be set by further order of the Court. [Doc. 36]  On November 9, 2012, the Court entered its Third Scheduling Order directing the parties to exchange exhibit and witness lists by May 15, 2013, and setting the trial for August 14, 2013.  On May 15, 2013, the parties filed exhibit lists and witness lists. [Doc. Nos. 53-56] On July 24, 2013, the United States filed an Amended Exhibit

List.  [Doc. 86]  On August 5, 2013, the United States filed a Second Amended Exhibit

List. [Doc. 102]  On August 7, 2013, the United States filed a Third Amended Exhibit

List [Doc. 108], which for the first time included as an exhibit a recording of a December

28, 2011, 911 call. On August 8, 2013, the Court held a pre-trial hearing to settle

objections to exhibits, among other matters.  During this hearing the Court learned of

Defendant's strenuous objection to the United State's untimely designation of the audio

recording of the 911 call as an exhibit.  After hearing arguments from the parties, the

Court directed the parties to brief the issue on an expedited schedule.  On August 11,

2013, the Court entered its Order Excluding 911 Phone Call. On August 13, 2013, the day

before trial was to have begun,  the United States filed its notice of appeal from the

Court's August 11, 2013 Order.  The filing of the United States' notice of appeal divested

the Court of jurisdiction, preventing the Court from proceeding with the scheduled trial.

   The Court anticipates that the appeal could consume at least six months from the

date of this Order, meaning that when Defendant is tried, he very likely will have been

detained without bail between two and one-half  to three years.  If convicted of first

degree murder, Defendant is subject to a mandatory life sentence, 18 U.S.C. § 1111; if

convicted of aggravated sexual abuse resulting in death, Defendant is subject to a term of

years up to life imprisonment, 18 U.S.C. § 2245.  By the time this case comes to trial,

Defendant will have been detained for a very small fraction of the term of imprisonment

he faces if convicted of first degree murder or aggravated sexual abuse resulting in death.

   Based on the state of the docket and the Court's experience with this case, the

Court finds that both parties have acted reasonably and in good faith in moving this case toward trial. The United States has not intentionally delayed trial of this case. The Court finds the period between Defendant's arrest and the scheduled August 2013 trial to be reasonable given the United States' reliance on scientific evidence and the need of the Defendant to prepare an adequate defense to the United States' evidence.  The time through mid-August 2013  represents the time it took to prepare Defendant's case for a Speedy Trial.  The period that the Court anticipates will be consumed by the United States' appeal is more troubling. In its Order Excluding 911 Phone Call, the Court found that the United States did not exercise diligence in obtaining the victim's cell phone from the Jemez Pueblo Police Department.  As a result, the United States did not have actual knowledge that someone had made a 911 call on the victim's cell phone on the night of the murder until late July 2013,  after May 14, 2013 deadline for designating exhibits set by the Court.  Had the United States acted with reasonable diligence, it is more likely than not that there would have been a timely designation of the 911 call and the trial would have proceeded as scheduled.  The Court finds that the additional time to be consumed by the United States' appeal would not be at issue had the United States acted with reasonable diligence.

The record, including the United States' proposed trial exhibits, establish that the victim was murdered with extraordinary brutality and cruelty.  Defendant concedes as much. [Doc. 146 at 2].  There is no question that the murder occurred in Defendant's home while Defendant was present.  Defendant has been linked to the murder by

fingerprint, seriological, and DNA evidence. Although Defendant has a plausible

defense–*i.e.*, that R.A., the other person present in Defendant's home, committed the

murder while Defendant was unconscious from over-consumption of alcohol–the United

States has made out a strong case of Defendant's guilt–albeit one that has yet to be tested

in a full adversarial hearing.  Additional evidence of Defendant's dangerousness is found

in the "Pre-trial Psychological Assessment" of Defendant prepared by Dr. Marshall.

There is no question that Defendant is a habitual abuser of alcohol, and that despite

various efforts to treat his alcoholism, Defendant's alcoholism remains uncontrolled.

There is no question that if Defendant has access to alcohol, he will relapse into binge

drinking.  The crimes with which Defendant is charged occurred in late December 2011, a

mere three months after his discharge from his most recent inpatient treatment program.

When Defendant drinks–which he most certainly will if he is not confined under

conditions that absolutely prevent him from obtaining alcohol–he presents a serious risk

of physical danger to himself and others with whom he may come into contact.   The

conditions of release proposed by Defendant–release to a halfway house--do not

adequately protect against the risk that Defendant will obtain access to alcohol.  The risk

of physical danger to himself and others that Defendant presents has been established by

clear and convincing evidence after full briefing of the issues and after a hearing at which

Defendant was represented by experienced counsel and was given the opportunity to

challenge the government's case for detention and to present evidence in support of

release

In view of clear and convincing evidence of Defendant's lack of volitional control of his drinking and the resultant danger to himself and others when he drinks, the Court finds that incapacitation of Defendant by pretrial detention continues to serve a compelling regulatory interest, and that pretrial detention of Defendant will continue to serve this interest through the period that the Court estimates it will take for the Court of Appeals to decide the United States' interlocutory appeal and the Court to try Defendant following remand.  Against the government's compelling interest, the Court must balance Defendant's fundamental liberty interest.  *Deters*, 143 F.3d at 582-83 ("The Supreme Court has observed that an individual's 'strong interest in liberty' is of a 'fundamental nature.'").  The Court finds that notwithstanding the United States' responsibility for the delay attributable  to the United States' untimely designation of the 911 call and its subsequent appeal of the Court's order excluding the 911 call, the governmental interest in protecting the community from the serious risk of physical harm presented by Defendant outweighs Defendant's interest in freedom from pretrial detention.   Continued pretrial detention of Defendant continues to serve a regulatory, as opposed to punitive, purpose.  Pretrial detention of Defendant under the circumstances of this case and for the period anticipated by the Court neither "'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" *Salerno*, 481 U.S. at 746 (citations omitted). Pretrial detention of Defendant under the circumstances of this case and for the period anticipated by the Court conforms to the requirements of substantive and procedural due process.

**WHEREFORE,**

**IT IS THEREFORE HEREBY ORDERED** that Defendant's *Motion to Review Detention Order* [Doc. 143] is **denied**.

**So ordered this 23rd  day of January, 2014.**

_____
M. CHRISTINA ARMIJO
Chief United States District Judge