THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GAVIN YEPA,

    Petitioner,

v.                                                    No. 20-cv-1092 WJ-KBM
                                                          12-cr-0163 WJ-KBM

UNITED STATES OF AMERICA,

    Respondent.

**MEMORANDUM OPINION AND ORDER**

    This matter is before the Court on Petitioner Gavin Yepa's Motion to Vacate Federal Sentence Under 28 U.S.C. § 2255 (Motion) (CV Doc. 2; CR Doc. 351). Yepa challenges his federal conviction for first degree murder. The Court previously directed him to show cause why his § 2255 Motion Petition should not be dismissed as untimely. The Government also filed a response regarding the applicability of tolling and the prison mailbox rule. Having reviewed the relevant law, arguments, and prison mail records, the Court will grant the Government's request to dismiss the Motion as time-barred.

**BACKGROUND**

    Evidence at trial showed that near midnight on December 28-29, 2011, Yepa knocked on the door of his neighbor, Clint Sando, and told him that there was a woman at his house who was not breathing. They ran to the house, where Sando found the victim's naked body on the floor covered in blood. A later autopsy determined the victim was likely killed by a shovel that was forced 15 inches into her vagina and cervix. Yepa proceeded to trial, where a jury convicted him of first-degree murder (18 U.S.C. § 1111). The Court (Hon. M. Christina Armijo, retired)

sentenced him to life imprisonment.

Yepa filed a direct appeal, arguing his statements to police should have been suppressed. The Tenth Circuit rejected this argument and affirmed. The United States Supreme Court denied certiorari relief on March 5, 2018. The Judgment became final no later than March 6, 2018. *See Rhine v. Boone*, 182 F.3d 1153, 1155 (10th Cir. 1999) (for habeas purposes, a conviction becomes final "after the United States Supreme Court has denied review").

Yepa filed the instant § 2255 Motion on October 22, 2020. Former Assistant Public Defender Brian Pori (hereinafter, "Trial Counsel") admits he drafted the Motion but maintains that Yepa is proceeding *pro se*. *See* CV Doc. 2 at 1, 11. It appears Trial Counsel employed such fiction because he was never appointed in this habeas matter, and because his Motion purports to raise his own ineffective assistance. Trial Counsel argues he and co-counsel failed to investigate; consult an expert witness; or prepare Yepa to testify. He also argues a life sentence is excessive. The § 2255 Motion invokes the prison mailbox rule to overcome the time-bar in this case.

By a Memorandum Opinion and Order entered July 21, 2021, the Court screened the Motion under Habeas Corpus Rule 4. *See* CV Doc. 4 (Screening Ruling). Yepa was directed to show cause why the case should not be dismissed as time-barred. Yepa filed a response on December 6, 2021, and the Government filed an amended response seeking dismissal, along with various records from the Bureau of Prisons (BOP), on January 28, 2022. *See* CV Docs. 10, 14. Yepa did not seek leave to file an optional reply, and the matter is fully briefed. After reviewing the allegations and uncontroverted prison records, the Court determines this matter may be resolved without a hearing. *See* 28 U.S.C. § 2255(c); Habeas Corpus Rule 8.

## DISCUSSION

Section 2255 motions must generally be filed within one year after a conviction becomes final.  *See* 28 U.S.C. § 2255(f)(1).   The limitation period can be extended where:

a.      The petitioner was prevented from making a motion by "governmental action in violation of the Constitution or laws of the United States" § 2255(f)(2);

b.      The motion is based on a "right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review" § 2255(f)(3); or

c.      The petitioner could not have discovered "the facts supporting the claim … through the exercise of due diligence." § 2255(f)(4).

Because the limitation period is not jurisdictional, equitable tolling may also be available under certain circumstances.  *See Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000).

As noted above, the Judgment became final on March 6, 2018, the day after the United States Supreme Court denied certiorari relief.  *See Rhine*, 182 F.3d at 1155.   The docket reflects no apparent activity during the next year.   Absent tolling, the limitation expired on March 6, 2019, and the 2020 Motion is time-barred.

Yepa alleges he delivered the Motion to prison officials on March 8, **2019**, but it did not arrive at the Court until nineteen months later, on October 22, **2020**.   *See* CV Doc. 2 at 13.   The Government asks the Court to reject his allegations, based on BOP records and their fantastical nature.   To resist dismissal, Yepa must establish: (1) he is entitled to statutory/equitable tolling between March 6 and March 8, 2019; and (2) he is entitled to the benefit of the prison mailbox rule, such that his October 2020 filing relates back to March 8, 2019.   For the reasons below, Yepa has failed to satisfy either requirement.

3

### A. Yepa is Not Entitled to Statutory or Equitable Tolling

The inability to file a federal habeas petition implicates statutory tolling under 28 U.S.C. § 2255(f)(2) and equitable tolling. Statutory tolling under § 2255(f)(2) applies where an "unconstitutional practice prohibited [the defendant] from accessing the court to 'attack his sentence.'" *United States v. Sheridan*, 561 Fed. App'x 689, 692 (10th Cir. 2014). *See also Weibley v. Kaiser*, 50 Fed. App'x 399, 403 (10th Cir. 2002) (statutory tolling unavailable absent specific facts that demonstrate how lack of access impeded ability to file habeas petition). Equitable tolling is "a rare remedy to be applied in unusual circumstances." *Al-Yousif v. Trani*, 779 F.3d 1173, 1179 (10th Cir. 2015). The doctrine applies if some extraordinary circumstance outside of the petitioner's control prevented him from timely filing. *See Lawrence v. Florida*, 549 U.S. 327 (2007); *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016). "[A]n inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances." *Yang v. Archuleta,* 525 F.3d 925, 928 (10th Cir. 2008). He must also describe "the steps he took to diligently pursue his federal claims while those circumstances existed." *Pena-Gonzales v. State*, 2022 WL 214747, at *1 (10th Cir. Jan. 25, 2022) (noting that *Yang* requires both "extraordinary circumstances *and* due diligence") (emphasis in original).

Yepa seeks statutory and equitable tolling to bridge the gap between the March 6, 2019 filing deadline and March 8, 2019, when he allegedly mailed his Motion. Yepa was in segregation at FCI Tucson during the relevant period. He and Trial Counsel allege they tried to file a timely § 2255 motion as follows:

> March 1, 2019: Yepa's mother allegedly approaches Trial Counsel and requests help with the § 2255 filing, as they cannot afford a lawyer.
>
> March 2, 2019: Trial Counsel allegedly sent the draft motion to Yepa at FCI Tucson via

4

overnight mail.

March 3, 2019: FCI Tucson allegedly receives the mailing from Trial Counsel.

March 5, 2019: Prison officials allegedly show Yepa the mailing but refuse to give him any portion of the paperwork because the mailing contains stamped envelopes. Stamps are classified as contraband.

March 8, 2019: Yepa alleges a "yellow envelope [containing the ghostwritten Motion] slid[] under [his] cell door, but [he] could not see which officer provided the envelope." Yepa contends he signed and mailed the Motion that day.

*See* CV Doc. 10 at 6-7, 15-16.

The Government proffered BOP records and mailing envelopes, which controvert this version of events. The records confirm Trial Counsel did mail Yepa a package in early 2019. However, Yepa's mother did not contact Trial Counsel about the matter on March 1, 2019. The mailing envelope from Trial Counsel is dated February 27, 2019. *See* Doc. 14-5 at 2. The BOP records also reflect that Trial Counsel used the wrong mailing address on that envelope, and it consequently arrived at the prison on March 8, 2019, after the filing deadline.[1] The envelope contains a stamp with the notation "Incoming Mail Received," and "08" appears to be discernable within the date stamp. *See* Doc. 14-5 at 2. The BOP mail report form states: "Legal/special mail arrived at this facility on this date (3/8/2019); Upon opening in the inmate's presence, staff intercepted unauthorized material," including pre-stamped envelopes, but "[a]ll other material was

---

[1] Trial Counsel address the mailing to: Gavin Yepa #64693-051, USP Tucson, 9300 Wilmont Rd, Tucson, AZ 85756. *See* Doc. 14-5 at 2. The physical address is actually 9300 **South** Wilmont Road. *See* https://www.bop.gov/locations/institutions/tcn/. And, even if Trial Counsel listed the correct physical address, BOP requires delivery of mail to its P.O. Box, where one is available. *See* Doc. 14-1 at 7; https://www.bop.gov/locations/institutions/tcn/ (noting FCI Tucson has a PO Box). It appears the carrier attempted delivery on February 28, 2019, but it is not clear whether the carrier went to the wrong address or the letter was rejected for another reason (*e.g.,* not using the P.O. Box as required by BOP rules). *See* Doc. 14-5 at 2. In any event, the mailing did not arrive at FCI Tucson until March 8, 2019, and any carrier delay following an incorrectly addressed package cannot be attributed to the prison.

provided to the inmate on this date" (*i.e.,* March 8, 2019). *Id.* at 1. Yepa did not seek to file a reply to controvert these BOP records. Thus, the records show that prison officials did not hold any mail between March 3, 2019 and March 8, 2019 or otherwise prevent Yepa from timely filing a habeas motion. Yepa is not entitled to statutory tolling under 28 U.S.C. § 2255(f)(2).

Trial Counsel's misdirection of the February 27, 2019 mailing also does not warrant tolling. "[C]ounsel's negligence is not generally a basis for equitable tolling." *Fleming v. Evans*, 481 F.3d 1249, 1255 (10th Cir. 2007). To obtain relief, the petitioner must demonstrate an attorney's conduct constitutes "far more than … 'excusable neglect'" or miscalculations. *Holland v. Florida*, 560 U.S. 631, 651-52 (2010). *See also Jones v. Romero*, 835 Fed. App'x 973, 978 (10th Cir. 2020) (declining to apply tolling based attorney's "improper advice regarding AEDPA's one-year window" for § 2254 filings). The attorney must engage in "[p]articularly egregious" conduct such as failing to follow through on "repeated, deceitful assurances that a habeas petition would soon be filed." *Trujillo v. Tapia*, 359 Fed. App'x 952, 955 (10th Cir. 2010). Trial Counsel was not formally retained to represent Yepa, and he never agreed to file a proceeding on Yepa's behalf. Trial Counsel simply misdirected a ghostwritten motion at the eleventh hour, which amounts to neglect. Yepa's allegation that he could not discover the facts supporting his claim until Trial Counsel "admitted" his own ineffective assistance is also not grounds for tolling. Under that standard, defense attorneys could decline to admit wrongdoing, and there would be no habeas statute of limitations.

Next, Yepa alleges he could not access his property after entering segregation on February 14, 2019. Yepa does not specify what property he needed to complete his Motion, what specific steps he took to obtain such property, or when he ultimately received the property after entering

6

segregation. *See, e.g., Donald v. Pruitt*, 853 Fed. App'x 230, 234 (10th Cir. 2021) (finding no equitable tolling based on lockdown that occurred before expiration of the one-year window because Plaintiff failed to show "he was pursuing his rights diligently throughout the one-year window, including before the COVID-19 restrictions went into place."). Moreover, Yepa did not prepare his own Motion, using his own documents. The Motion was ghostwritten by Trial Counsel on or before February 27, 2019. Yepa's initial inability to access his property in segregation is therefore not grounds for statutory or equitable tolling.

Finally, the Court notes that even if the BOP records did not controvert Yepa's timeline of events, his version still does not establish an entitlement to tolling. Prison officials did not prevent him from preparing or mailing a timely habeas motion; under his version of events, they waited five days to pass on ghostwritten motion for him to sign. "While the quality of [Yepa's] might have been improved with greater legal assistance, there is no basis in th[is] record … to believe [he] … was incapable of filing a timely habeas petition." *Garcia v. Hatch*, 343 Fed. App'x 316, 319 (10th Cir. 2009). And, segregation is not an extraordinary aspect of prison life. *See Winston v. Allbaugh*, 743 Fed. App'x 257, 258-59 (10th Cir. 2018) (citing cases and noting that lockdowns are generally not grounds for equitable tolling). Yepa's own facts show he waited until the last minute, relied on a ghostwritten motion from an attorney who had a conflict and was not appointed, and failed to show due diligence throughout the entire limitation period. *See, e.g., Donald*, 853 Fed. App'x at 234. For all of these reasons, tolling is not available between March 6, 2019 and March 8, 2019.

### B. Alternatively, the Prison Mailbox Rule Does Not Apply

Even if Yepa could obtain tolling to bridge the two-day gap in March **2019**, his Motion did

7

not arrive at the Court until October 22, **2020**. He must therefore establish the prisoner mailbox rule applies to overcome any time bar. The prison mailbox rule states that, when certain conditions are satisfied, an inmate who places a habeas petition "in the prison's internal mail system will be treated as having 'filed' on the date it is given to prison authorities for mailing to the court." *Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005). "[I]f the prison has a legal mail system, then the prisoner must use it as the means of proving compliance with the mailbox rule." *Id.* The legal mail system, "by which mail is logged in at the time and date it is received, provides a 'bright line rule' for determining the date of a pro se prisoner's filing." *United States v. Gray*, 182 F.3d 762, 765 (10th Cir. 1999) (quotations omitted). If the prison lacks such a system, the prisoner must "submit a declaration or notarized statement setting forth the notice's date of deposit with prison officials and attest that first-class postage was pre-paid." *United States v. Ceballos-Martinez*, 387 F.3d 1140, 1145 (10th Cir. 2004). The petitioner bears the burden "to show he complied with these requirements and that his filing therefore was timely under the prison mailbox rule." *Pease v. Raemisch*, 673 Fed. App'x 877, 879 (10th Cir. 2016) (citing *Price*, 420 F.3d at 1165). Without the benefit of the rule, a pleading is deemed "filed when it [is] received by the court." *Price,* 420 F.3d at 1167.

    Yepa's original declaration states:

    I, Gavin Yepa, am currently in S.H.U. custody at U.S.P. Tucson. I'm filing my 28 U.S.C. [§] 2255 today on March 8, 2019 via the mailbox rule. I'm delivering my motion to prison officials to be sent to the UNITED STATES DISTRICT COURTS, DISTRICT OF New Mexico. My legal mail has prepaid postage on it, and this motion is being filed pursuant to Houston v. Lack.

    Signed and Dated on March 8, 2019.

*See* CV Doc. 2 at 13.

The Screening Ruling noted such statement does not comply with the prison mailbox rule. It does "not say whether a legal mail system was available or, if it was, whether [Yepa] used it." *Pease*, 673 Fed. App'x at 879 (rejecting mailbox argument). The Screening Ruling also pointed out an inmate does not satisfy the mailbox rule by simply stating he handed his Motion to prison officials. *See Price,* 420 F.3d at 1166 ("Alleging only that [the inmate] used 'the institutional mails' is insufficient to connote use of the legal mail system.").

Yepa's show-cause response primarily describes how and when he received the draft Motion, which has been controverted by the BOP records. It does not cure the deficiencies in his original declaration or otherwise meet the technical requirements of the prison mailbox rule. The show-cause response again states Yepa mailed the Motion "by placing [it] … in the hands of prison legal mail staff, first class postage prepaid and properly addressed." While Yepa states the prison did not log his mail, his declaration does not indicate whether or not FCI Tucson has a legal mail system. *See U.S. v. Miles*, 343 Fed. App'x 392, 393 (10th Cir. 2009) ("At the outset, Defendant has failed to establish that a system designed for legal mail was unavailable for him to use"); *Brown v. McKune*, 162 Fed. App'x 795, 797 (10th Cir. 2006) (inmate's "bald assertion that he gave his … motion to prison authorities … does not meet the stringent requirements of" the mailbox rule). The Government's exhibits show FCI Tucson has a tracking system for certified mail, and there is no record Yepa used that system. *See* Doc. 14-2, 14-3. It is not clear whether inmates are expected to use the certified mail system for legal documents or whether that system is tantamount to a legal mail system. However, Yepa has the burden of clarifying in his declaration whether or not FCI Tucson has a legal mail system, and he failed to do so after detailed instructions on that point. Thus, Yepa's supplemental declaration does not meet the technical requirements of the

9

prison mailbox rule.

As a third, alternative basis for dismissal, the show-cause response fails to sufficiently overcome the nineteen-month gap between the alleged mailing date and the arrival of the Motion with the Clerk. Courts need "not treat a document as filed on the date it was purportedly submitted to prison staff for mailing, when the gap between that date and the postmark date is so long that the claimed submission date appears implausible." *Wolff v. California*, 236 F. Supp. 3d 1154, 1158 (C.D. Cal. 2017). Numerous courts have declined to apply the prison mailbox rule when the gap between mailing and delivery was a matter of weeks or months. *See Chavis v. McCulloch,* 2020 WL 5051571, at *2 (N.D.N.Y. Aug. 27, 2020) ("[I]t is not appropriate to apply the prison mailbox rule" based a "lengthy [4 week gap] … and absent any explanation from" the plaintiff); *Womack v. Baughman*, 2020 WL 898229, at *4, n. 5 (E.D. Cal. Feb. 25, 2020) (refusing to apply prison mailbox rule due to 52 day gap between signing and filing); *Inesti v. Hagan*, 2012 WL 3822224, at *3 (S.D.N.Y. Sept. 4, 2020) (refusing to apply the prison mailbox rule, absent further proof, where the original complaint was postmarked one year after it was signed); *McKinney v. Lanigan*, 2019 WL 415325, at *3 (D.N.J. Feb. 1, 2019) (issuing order to show cause based on implausible allegation that complaint was mailed over a year before it arrived).

As the Screening Ruling noted, there is nothing on the envelope to indicate the Motion was lost or misdirected on route to the Court. *See* CV Doc. 2 at 22. In fact, the envelope is not postmarked, nor does it contain a bar code or other notation indicating it travelled through the mail. *Id.* "According to the United States Postal Service's Handbook PO-408, [a] postmark is … applied … on the address side of a stamped mailpiece [to] indicate[] the location and date the Postal Service accepted custody of a mailpiece, and it cancels affixed postage." *Mayen v. New Penn Fin.*, LLC,

2018 WL 2427177, at *6 (S.D. Cal. May 29, 2018) (quoting United States Postal Service Handbook PO-408, at 1-1.3 Postmarks, https://about.usps.com/handbooks/po408/ch1_003.htm). Yepa's envelope contains three Forever stamps, which do not appear to have been cancelled. *See* CV Doc. 2 at 22. Neither Yepa nor Trial Counsel inquired during the 19-month day, even though the Motion did not appear on the docket and Yepa did not receive a file-stamped copy. This is also the second local case involving a suspected FPD ghostwriter and an alleged multi-month gap between the mailing and arrival of a § 2255 motion. *See Garcia v. U.S.*, 21-cv-0988 RB-JFR (dismissing post-judgment motion on other grounds, but noting with skepticism the allegation from a Texas inmate that he mailed his § 2255 motion months earlier but it never arrived at the Court). While the latter circumstance is not dispositive, it gives context to the other evidence suggesting Trial Counsel's use of the prison mailbox rule is a tactic to overcome the time-bar.

Yepa's show-cause response makes little or no attempt to explain the 19-month gap, aside from giving general examples of mail delays and stating he did not want to bother the Court. Based on the above circumstances, the extraordinary length of the gap, the condition of envelope, and the fact that BOP records establish Yepa and Trial Counsel lied in their sworn statements about other aspects of the mailing timeline, the Court declines to accept the allegation that the Motion arrived at the Court 19 months after its mailing. Thus, even if Yepa was entitled to tolling for two days in March, and even if he met the technical requirements of the prison mailbox rule, his Motion would still be time-barred.

C. **Yepa Has Not Established Actual Innocence**

Construed liberally, the show-cause response also seeks an exception to the statute of limitations based on actual innocence. Actual innocence is a "gateway [that] … enables habeas

11

petitioners to overcome a procedural bar in order to assert distinct claims for constitutional violations." *Farrar v. Raemisch*, 924 F.3d 1126, 1130 (10th Cir. 2019) (quotations omitted). To "claim actual innocence a petitioner must present new, reliable evidence that was not presented at trial." *Rose v. Newton-Embry*, 194 Fed. App'x 500, 502 (10th Cir. 2006). "Such evidence typically consists of 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). The petitioner must also "show that in light of the new evidence, 'no reasonable juror would have found the defendant guilty.'" *Rose*, 194 Fed. App'x at 502 (quoting *Schlup*, 513 U.S. at 329). Such evidence is so rare that "in virtually every case, the allegation of actual innocence has been summarily rejected." *Schlup*, 513 U.S. at 324.

Yepa's murder convictions are based on DNA evidence and eyewitness testimony. Yepa's cousin testified that he observed Yepa forcibly insert items into the victim's vagina as she lay bleeding on the floor. *See* CR Doc. 328 at 267-275. Another witness observed blood all over Yepa's home on the night of the murder; DNA evidence confirmed Yepa's blood was mixed with the victim's blood; and Yepa's fingerprint was left on the shovel that killed the victim. *See* CR Doc. 327 at 215-225; CR Doc. 337 at 155-156.

In his show-cause response, Yepa alleges everyone knows who really committed the crime, he is innocent, and police never tested certain fingernails and clothing items for evidence. *See* CV Doc. 10. These bald allegations do not constitute new, reliable evidence of innocence that would change a juror's verdict. Yepa tried to accuse his cousin of committing the crime at trial, and DNA evidence excluded that man as a suspect. *See* CR Doc. 339 at 62. And, as noted above, the physical evidence tying Yepa to the crime was compelling. Yepa has therefore failed to establish

an actual-innocence gateway claim to overcome the timebar.

In sum, the one-year limitation period expired no later than March 6, 2019, and Yepa's Motion filed October 22, 2020 is time-barred. The Court will dismiss the Motion (CV Doc. 2; CR Doc. 351) with prejudice and administratively terminate Yepa's show-cause response (CV Doc. 10), which is styled as a Motion For Tolling. The Court will also deny a certificate of appealability (COA) under Habeas Corpus Rule 11, as the time-bar is not reasonably debatable in this case. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (COA issues where "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong").

**IT IS ORDERED** that the Clerk's Office shall **TERMINATE** Yepa's pending show-cause response (**CV Doc. 10**), which he styled as a Motion for Tolling.

**IT IS FURTHER ORDERED** that Petitioner Gavin Yepa's Motion to Vacate Federal Sentence Under 28 U.S.C. § 2255 (**CV Doc. 2; CR Doc. 351**) is **DISMISSED with prejudice**; a certificate of appealability is **DENIED**; and the Court will enter a separate judgment closing the civil case.

**SO ORDERED**.

_____
CHIEF UNITED STATES DISTRICT JUDGE